UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012

Title: MICHAEL ASHBEY V. ARCHSTONE PROPERTY MANAGEMENT, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS: (IN CHAMBERS): ORDER DENYING MOTION TO COMPEL ARBITRATION**

Before the Court is a Motion to Compel Arbitration ("Motion") filed by Defendant Archstone Communities LLC ("Defendant"). (Dkt. 8).

This case raises the question of whether an employer can enforce an arbitration provision in an employment handbook where the employer represented to its employee that the handbook "does not . . . create any contractual rights." The Court answers that question in the negative. Accordingly, the Court DENIES the Motion.[1]

**I.**      **Background**

Defendant seeks to compel arbitration of state and federal claims brought by Plaintiff Michael Ashbey ("Plaintiff") arising from Defendant's alleged violation of the Labor Code and wrongful termination of Plaintiff. *See* Michaels Decl. ("Compl.") (Dkt. 4) Ex. A at ¶ 6, 37-44. Plaintiff and his wife were both fired by Defendant allegedly in retaliation for a complaint made by his wife about sexual harassment by another employee. *Id.* at ¶ 37-44.

---

[1] The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                                                     Page 2

---

      The gravamen of Defendant's argument is that the existence of a valid, written arbitration contract is shown by the arbitration provision in Defendant's Company Policy Manual ("Manual") and Plaintiff's signature on two forms ("2009 and 2010 Receipts") in which Plaintiff acknowledges receiving directions on how to access the Manual.

      Although the parties dispute some of the following facts, the Court need not resolve this fact dispute because the Court concludes, *infra*, that no arbitration contract existed even taking all of Defendant's facts as true.[2] Accordingly, the Court assumes *without deciding* that Defendant's facts are true.

### a. 2009 and 2010 Receipts acknowledging access to Manual

      Plaintiff's signature appears at the signature line on the bottom of a one-page document titled "Acknowledgement of Receipt of Archstone Company Policy Manual 2009" ("2009 Receipt"), which reads as follows:

> I acknowledge that I have received directions as to how I may access the Archstone Company Policy Manual, including the Dispute Resolution Policy. I understand that Archstone can administer, interpret, discontinue, supplement, amend or withdraw any of the employment and personnel policies and procedures set forth in this Company Policy Manual. I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the Dispute Resolution Policy, and to adhere to all of the policies contained herein.

---

[2] Ordinarily, if the parties dispute the facts giving rise to the existence of a valid, written arbitration agreement in a contract, a court shall order a trial on the issue to determine which facts are true. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. . . . [T]he party alleged to be in default may . . . demand a jury trial of such issue . . . ."); *Clar Productions, Ltd. v. Isram Motion Pictures Prod. Services, Inc.*, 529 F. Supp. 381, 383 (S.D.N.Y. 1982) (ordering "evidentiary hearing" because there was an "issue of fact" as to whether a valid arbitration agreement was formed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                                                   Page 3

---

**I understand that this document supersedes any of the Human Resources policies contained in any prior Human Resources handbook, Company Policy Manual, and Code of Conduct.**

I understand that the rules, policies and procedures set forth in the online/intranet Company Policy Manual are subject to change, modification or amendment by Archstone from time to time, without advance notice.

**I also understand that this Company Policy Manual does not alter the employment-at-will relationship discussed in the Archstone Company Policy Manual or create any contractual rights. I understand that, as an employee-at-will, either Archstone or I may terminate the employment relationship at any time, with or without notice or cause.** I understand that if at any time I have any questions regarding this Company Policy Manual I can discuss them with my supervisor, office manager, the Legal Department or a Human Resources representative. During my employment, I agree to abide by the provisions contained in this Company Policy Manual.

*Please sign and return this form to the Archstone Human Resources Department at 9200 East Panorama Circle, Suite 400, Englewood. CO 80112.*

*See* Lynch Decl. (Dkt. 8) Ex. C (bold font and italics in original).

Plaintiff's signature also appears at the signature line on the bottom of a one-page document titled "Acknowledgement of Receipt of Archstone Company Policy Manual 2010" ("2010 Receipt"). *See id.* Ex. D. This document has identical language to the 2009 Receipt, except that the third paragraph is replaced with the following sentence:

> I understand that the rules, policies and procedures set forth in the printed version of the Company Policy Manual are subject to change, modification or amendment by Archstone from time to time, without advance notice, and that all changes are included in the online/intranet version of the Company Policy Manual and such changes are effective when posted.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 12-0009 DOC (RNBx)                     Date: April 13, 2012
                                                                                                    Page 4

### b. Defendant's distribution or online posting of the Manual

Defendant avers that "a memorandum was distributed to all employees along with a hard copy of the 2009 Company Policy Manual."[3] Lynch Decl. (Dkt. 8) at ¶ 6. Defendant has submitted an exhibit of the memorandum, which contains a table of four rows and three columns under the heading "Summary of Modifications." *Id.* Ex. A. The top row contains the headings "Policy," "Older Version," and "New Version." *Id.* Ex. A. The last row appears as follows:

| Dispute Resolution Policy | Not in 2008 manual. | Associate and company agree to utilize an outside arbitrator for any disputes relating to employment and/or termination of employment. Please see page 20 in the manual for a complete description of this new policy. |
|---|---|---|

The memorandum also states in bold that:

**To ensure each associate receives the Company Policy Manual, we ask that you sign the acknowledgement in the front to the Company Policy Manual and turn it in to . . . Human Resources. . . .**

We hope that this manual is helpful to you in performing your duties and responsibilities.

*Id.* Ex. A.

### c. Manual containing "Dispute Resolution Policy"

---

[3] In contrast, Plaintiff avers that he has "never seen" this memorandum (Lynch Decl. Ex. A) and was "always informed by my supervisor that the manual only contained information regarding general workplace conditions and requests for vacation time." Ashbey Decl. at ¶ 6, 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                                Date: April 13, 2012
                                                                                              Page 5

Defendant avers that "[a]ll employees have access to [Defendant's] intranet website, insideArchtone.com" and that a "link to the Company Policy Manual is prominently displayed on the left side of the Human Resources portal on the intranet." *Id.* at ¶ 5.

Defendant's motion refers to the "Company Policy Manual and Dispute Resolution Policy set forth therein."[4]  *See* Mot. at 6:11-12.  Thus, the Court assumes without deciding that the Dispute Resolution Policy is contained in the hard copy and online versions of Manual.

Defendant has submitted an exhibit of the Dispute Resolution Policy "in effect in 2009 and 2010." *Id.* Ex. B.  One of the paragraphs of the Dispute Resolution Policy describes several types of disputes and states that "this Policy requires all such disputes between Employee and the Company to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.*

## II.    Legal Standard

The Federal Arbitration Act ("FAA") governs the enforceability of written arbitration provisions in certain contracts involving interstate commerce.  *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24–26 (1991).

A party seeking to compel arbitration under the FAA has the burden to show: (1) the existence of a valid, written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue.[5]  *Cox v. Ocean View Hotel*

---

[4] Defendant has not provided this Court with a complete version of the Manual in either hard copy or online form.

[5] The FAA states in full: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 12-0009 DOC (RNBx)                  Date: April 13, 2012
                                                                                         Page 6

---

*Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also* 9 U.S.C. § 2.

      The first prong of the FAA's two-part test – the existence of a valid, written agreement to arbitrate in a contract – is governed by state contact law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002). It is "well settled" that the existence of a valid, written agreement to arbitrate in a contract is an issue for court, not an arbitrator, to decide. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847, 2855-56, 177 L. Ed. 2d 567 (2010).

      "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010). Thus, "[a]ny 'preference' for arbitration is reserved for the interpretation of the scope of a valid arbitration clause." *Id.* The "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the first prong of the FAA test: the existence of a valid, written agreement to arbitrate in contract.[6] *Comer v. Micor, Inc*., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

      The policy favoring arbitration applies only to the second prong of the FAA's two-part test because the FAA reflects *both* a "liberal federal policy favoring arbitration" *and* the "fundamental principle that arbitration is a matter of contract." *See AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1745 (2011); *see also AT & T Technologies, Inc. v. Communications Workers of America*, 475 US 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Global Markets, Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) ("Contrary to the suggestion of [movant], we resolve this issue without a thumb on the scale in favor of arbitration because the 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the

---

[6] Thus, Defendant is incorrect in urging this Court to hold that a valid, written agreement to arbitrate existed simply because the Supreme Court in *Concepcion* "declare[d] a liberal policy favoring the enforcement of arbitration policies." *See* Mot. at 7:7-10; 8:28-9:3 (citing *Concepcion*, 131 S. Ct. at 1740).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                                                   Page 7

---

parties.'"); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) ("The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement."); *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002) (same).

### III. Discussion

Defendant has failed to show the existence of a valid, written agreement to arbitrate in a contract. Because Defendant has failed to satisfy this first prong of the FAA's two-part test, the Court does not reach the second prong.

Defendant has failed to satisfy the first prong of the FAA because: (1) under California law, there was no offer to form an arbitration contract given that Defendant represented to Plaintiff that its handbook was not a contract; (2) alternatively, Plaintiff did not knowingly waive a judicial forum given that the forms Plaintiff signed did not mention the key term, "arbitration"; and (3) the vast majority of persuasive authority holds that no arbitration contract exists where the employer represented to its employee that its policies or handbook were not a contract.

#### a. Under California law, there was no offer to form an arbitration contract

Defendant contends that "Plaintiff's receipt, understanding and acknowledgement of [Defendant's] Dispute Resolution Policy, and his decision to continue his employment with [Defendant], is sufficient evidence that the parties entered a binding agreement to arbitrate claims." Mot. at 10. Defendant's argument is that the existence of a valid, written arbitration contract is shown by the arbitration provision in Defendant's online Company Policy Manual ("Manual") and Plaintiff's signature on two forms ("2009 and 2010 Receipts") in which Plaintiff acknowledged receiving directions on how to access the Manual.

While Defendant is unclear as to *which* documents created the contract to arbitrate, the Court concludes that *neither* of them, taken individually or together, constituted offers to form an arbitration contract and thus no arbitration contract exists. First, to the extent that Defendant argues that its 2009 or 2010 Receipts were offers to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                         Page 8

---

form an arbitration contract that Plaintiff accepted by signing them, Defendant's argument fails as a matter of law because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights."

      Second, to the extent that Defendant argues that its physical distribution or online posting of the Manual constituted an offer to form an arbitration contract that Plaintiff accepted by continuing employment, Defendant's argument fails as a matter of law because: (1) California courts routinely hold that this conduct does not form an arbitration contract; (2) California courts have roundly rejected Defendant's interpretation of *Asmus v. Pacific Bell*, 23 Cal. 4th 1 (2000); and (3) even if Defendant's interpretation of *Asmus* is correct, that general rule does not apply to the specific facts of this case because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights."

### i. An offer is an essential element of a contract

      Under California law, an "essential element of any contract" is the "consent of the parties," which requires: (1) "an offer communicated to the offeree"; and (2) "an acceptance communicated to the offeror."[7] *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001); *City of Moorpark v. Moorpark Unified Sch. Dist.*, 54 Cal. 3d 921, 930 (1991) (holding that no offer existed); Cal. Civ.Code, § 1550.

      An "offer" is the "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Donovan*, 26 Cal. 4th at 271. The "pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Id.*

      If an offer lacks definite terms specifying the acts that constitute acceptance and performance, there is no "mutual consent to contract" and thus "no contract formation." *Fair v. Bakhtiari*, 40 Cal. 4th 189, 202, 147 P.3d 653, 662 (2006); Cal. Civ. Code § 1580

---

[7] Under California law, a "contract of employment is governed by the same rules applicable to other types of contracts, including the requirements of offer and acceptance." *Reynolds Elec. & Eng'g Co. v. Workmen's Comp. Appeals Bd.*, 65 Cal. 2d 429, 433 (1966).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                          Page 9

("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."). An offer requires "sufficiently definite" terms such that the acts which constitute acceptance and performance are "reasonably certain." *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 768, 770 (1993); *see also* Cal. Civ. Code § 1598 ("Where a contract has but a single object, and such object is . . . so vaguely expressed as to be wholly unascertainable, the entire contract is void.").

         ii. **The Receipts requesting Plaintiff to "agree to abide by" the Manual are not offers to form an arbitration contract because the Receipts expressly state that the Manual "does not . . . create any contractual rights"**

To the extent that Defendant argues that its 2009 or 2010 Receipts were offers to form an arbitration contract that Plaintiff accepted by signing them, Defendant's argument fails as a matter of law because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights."

The 2009 and 2010 Receipts expressly state, in bold, that the "**Company Policy Manual . . . does not . . . create any contractual rights**." *See* Lynch Decl. Ex. C (2009 Receipt), Ex. D (2010 Receipt). This disclaimer of any contractual rights appears two sentences before the *only* sentence in the 2009 and 2010 Receipts that could even remotely be construed as an offer: the request that Plaintiff "agree to abide by the provisions contained in this Company Policy Manual." Thus, the disclaimer that the Manual "does not . . . create any contractual rights" *modifies* the latter statement "I agree to abide by" the Manual.

The 2009 and 2010 Receipts' request that Plaintiff "agree to abide" by a document which "does not . . . create any contractual rights" is not an offer because the request does not manifest a willingness to enter into a bargain. Rather, the 2009 and 2010 Receipts manifest the *exact opposite* – Defendant's intent *not* to be bound by the terms of its own Manual. Because the 2009 and 2010 Receipts do not "manifest a willingness to bargain," they do not constitute an offer. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001).

Furthermore, the 2009 and 2010 Receipts are not offers because they do not provide "definite terms" such that the acts which constitute "acceptance" and "performance" are "reasonably certain." *Ladas v. California State Auto. Assn.*, 19 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                      Date: April 13, 2012
                                                                                                     Page 10

App. 4th 761, 770 (1993). Given that Defendants expressly represented that the Manual "does not . . . create any contractual rights," Plaintiff had no reason to believe that his signature on the Receipts or continued employment constituted acceptance or performance that would create an arbitration contract. Indeed, the 2009 and 2010 Receipts are entirely silent as to *what* acts by Plaintiff would constitute acceptance and performance. Thus, these Receipts are too vague to constitute offers. *See id.* at 768, 770 (affirming dismissal of employee's claim because no contract existed where handbook's statement that employer had a "policy" was "too vague and indefinite" to constitute an offer to be contractually bound by that policy).

       Finally, several California courts and district courts in California hold that no contract is created where an employer's documents state that its handbook does not create contractual rights, even if an employee signs a form agreeing to adhere to the employment handbook's policies. *See Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508, 515, 522-23 (1995) (reversing jury verdict for employee because no contract was formed by employee signing form stating that "I am responsible for knowing and adhering to the Policies" in the handbook but the handbook stated it was "not intended to give rise to contractual rights or obligations"); *Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439-40 (C.D. Cal. 1995) (granting employer summary judgment on employee's breach of contract action because under California law an "employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract'" does not create a "written employment contract"); *Am. Mortg. Network v. LoanCity.com*, D044550, 2006 WL 3199291 (Nov. 7, 2006) ("Case authority supports the proposition that an employee handbook containing . . . an express disclaimer that it is not a binding contract creates no enforceable contractual rights.").

       In sum, the 2009 and 2010 Receipts' requests that Plaintiff "agree to abide" by Defendant's Manual did not manifest a willingness to enter into a bargain because both Receipts stated that the Manual "does not . . . create any contractual rights." Because there was no manifestation of a willingness to enter into a bargain, there was no offer to form an arbitration contract. Because there was no offer, there is no arbitration contract.

### iii. Defendant's physical distribution or posting online of a Manual containing a "Dispute Resolution Policy" is not an offer to form an arbitration contract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)　　　　　　　　　　　　Date: April 13, 2012
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 11

---

　　　　To the extent that Defendant argues that its physical distribution or online posting of the Manual constituted an offer to form an arbitration contract that Plaintiff accepted by continuing employment, Defendant's argument fails as a matter of law because: (1) California courts routinely hold that this conduct does not form an arbitration contract; (2) California courts have roundly rejected Defendant's interpretation of *Asmus v. Pacific Bell*, 23 Cal. 4th 1 (2000); and (3) even if Defendant's interpretation of *Asmus* is correct, that general rule does not apply to the specific facts of this case.

### 1. California courts routinely hold that the distribution of an employment handbook with an arbitration provision and an employee's continued employment does not form an arbitration contract

　　　　An offer requires "such definite terms" that the acts which constitute acceptance and performance are "reasonably certain." *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 768, 770 (1993); *Fair v. Bakhtiari*, 40 Cal. 4th 189, 202, 147 P.3d 653, 662 (2006).

　　　　For this reason, California courts regularly hold that no contract to arbitrate is formed simply because an employee receives a handbook that contains an arbitration policy and continues employment. *See e.g., Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 137 Cal. Rptr. 3d 773, 801 (2012) (upholding denial of motion to compel arbitration and rejecting employer's argument that employee's "continued employment after receipt of the policies in the Handbook constitutes acceptance of and consideration for the arbitration policy"). *Romo v. Y–3 Holdings, Inc.*, 87 Cal.App.4th 1153, 1156, 1159-60 (2001) (upholding denial of motion to compel arbitration where handbook contained arbitration provision and employee signed form stating "I acknowledge receipt of my copy of the handbook . . . . I have read and understood its contents . . . . I agree to abide by these policies and rules during my employment," but form also stated that handbook's "policies . . . shall, in no manner, be construed to imply a contract"); *Dominguez v. Alden Enterprises, Inc.*, B203182, 2009 WL 27156 (Cal. Ct. App. Jan. 6, 2009) (upholding denial of motion to compel arbitration in part because "an employee's acknowledgement of receipt of an employee handbook, or an agreement to be bound by the handbook's contents generally, may not be enough to bind the employee to arbitrate under the handbook's arbitration policy").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
                                                                       Page 12

In sum, California law is quite clear that an employee does not enter into an arbitration contract simply by continuing employment after the employer distributes a handbook with an arbitration provision. Thus, Defendant's distribution or online posting of the Manual was not an offer sufficiently definite to form an arbitration contract.

### 2. Defendant's interpretation of *Asmus* has been roundly rejected by California courts and district courts applying California law

Defendant relies solely on *Asmus v. Pacific Bell*, 23 Cal. 4th 1 (2000) for the argument that Defendant's distribution or online posting of the Manual constituted an offer that Plaintiff accepted by continuing employment.

California courts and district courts in California have roundly rejected this argument regarding *Asmus* because *Asmus* never "addressed whether an arbitration agreement *existed* between an employer and employee." *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1171 (2007); *Mayers v. Volt Mgmt. Corp.*, 203 Cal. App. 4th 1194, 137 Cal. Rptr. 3d 657, 671 (Feb. 27, 2012) ("*Asmus* did not even address the enforceability of arbitration agreements."). Rather, *Asmus* addressed "an employer's *discontinuance* of a management employment security policy," that is, an employer's termination of an implied contract that benefited employees. *Mitri*, 157 Cal. App. 4th at 1171 (emphasis added). In *Asmus*, "both parties *agreed* that the employees had accepted a unilateral contract by their performance." *Id.* (emphasis added). Thus, "the question in *Asmus* was whether the unilateral contract, once formed, could be unilaterally modified or terminated by the employer." *Id.* Here, in contrast, the question is whether a written arbitration agreement was *ever* formed.

Furthermore, courts have roundly rejected Defendant's interpretation of *Asmus* because *Asmus* did not expand an employer's ability to form a contract, but in fact imposed *limits* on an employer's ability to unilaterally alter an existing employment contract's terms. First, *Asmus* does not stand for the proposition that "an employer can terminate or modify a unilateral employment contract without employee's express knowledge and consent." *McKinney v. Bonilla*, 2010 U.S. Dist. LEXIS 71730 at *17 (S.D. Cal. July 15, 2010). Instead, *Asmus* held only that "an employer may terminate a unilateral contract of indefinite duration, *as long as* its action occurs *after a reasonable*

Case 8:12-cv-00009-DOC-RNB   Document 19   Filed 04/13/12   Page 13 of 20   Page ID #:242

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                             Date: April 13, 2012
                                                             Page 13

*time*, and is subject to prescribed or implied *limitations*, including *reasonable notice* and *preservation of vested benefits*." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 18 (2000) (emphasis added). Precisely because *Asmus* imposed limitations on an employer's ability to alter an existing contract, courts have held that a contract provision which "requires the employee to consent in advance to be bound by any revisions without prior notice . . . does not comply with California law."[8] *See McKinney*, 2010 U.S. Dist. LEXIS 71730 at *17 (denying employer's motion to compel arbitration based employee's knowledge of arbitration provision in employee handbook and continued employment). Furthermore, treatises have not adopted Defendants' novel interpretation of *Asmus*, instead limiting it to its express holding. *See, e.g.*, Rutter Cal. Prac. Guide Employment Litigation Ch. 4-B.

In sum, the Court concludes that *Asmus* does not support Defendant's argument that its physical distribution or online posting of the Manual constituted an offer to form an arbitration contract that Plaintiff accepted by continuing employment, given that this same argument has been repeatedly rejected by both California courts and district courts applying California law.

### 3. Alternatively, even if Defendant's characterization of *Asmus* is correct, that general rule does not apply to the specific facts of this case

Alternatively, even if Defendant is correct that, in the abstract, an employer's distribution or online posting of a handbook constitutes an offer to form an arbitration contract, that *general* rule does not apply to the *specific* facts if this case. Because Defendant *also* represented to Plaintiff that the Manual "does not. . . create any contractual rights," Defendant's distribution or online posting of a handbook was not an offer.

In *Mitri v. Arnel Management Company*, the court upheld denial of a motion to compel arbitration where employees signed forms acknowledging that they read the handbook because, although the handbook contained an arbitration provision, other language made it unreasonable to believe that the handbook itself was an offer. *Mitri v.*

---

[8] Interestingly, Defendant's own Manual does not appear to comply with California law as delineated by *Asmus* because the Receipts stated that the Manual was "subject to change . . . by Archstone . . . without advance notice." *See* Lynch Decl. Ex. C, Ex. D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                                    Date: April 13, 2012
                                                                                                          Page 14

*Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1170-71, 69 Cal. Rptr. 3d 223, 228 (2007). The employees signed a form stating "I have read and understood . . . the Handbook." *Id.* at 1169. The handbook contained both an arbitration provision and the statement that "[a]s a condition of employment, all employees are required to sign an arbitration agreement." *Id.* at 1170.

     *Mitri* rejected the employer's alternative arguments that a contract to arbitrate arose due to either: (1) the distribution of the handbook and the employee's continued employment; or (2) the distribution of the form and the employee's signature on it. First, the court rejected the employer's argument that the distribution of the handbook itself was not an offer for a unilateral contract to arbitrate because it was "contradict[ed]" by another "express term" in the handbook. *Id.* at 1172-73. The court reasoned that the employer's argument was "completely undermine[d]" by the handbook's statement that "all employees are required to sign an arbitration agreement," which indicated "an intent to have employees sign a *separate* arbitration agreement" other than the handbook. *Id.* at 1170-73 (emphasis added). Second, the court held that the form itself was not an offer to form an arbitration contract because "[c]onspicuously absent from the . . . form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision." *Id.* at 1173.

     Even assuming that Defendant's facts are true – facts which Plaintiff disputes – the present case is an even stronger example of the lack of mutual consent to arbitrate than in *Mitri*. First, like in *Mitri*, the Court rejects Defendants' argument that the distribution or posting of the Manual itself is an offer for a unilateral contract because this argument is contradicted by an "express term" in the 2009 and 2010 Receipts: the statement that the Manual "does not . . . create any contractual rights." *See* Lynch Decl. Ex. C; Ex. D. As explained previously, no offer exists where the purported offeror expressly disclaims that a contract is being formed.

     Second, like in *Mitri*, the 2009 and 2010 Receipts themselves are not an offer to form an arbitration contract because "[c]onspicuously absent from the . . . form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision." *See Mitri*, 157 Cal. App. 4th at 1173. The 2009 and 2010 Receipts' passing reference to a "Dispute Resolution Policy" does not inform Plaintiff that he is entering into a contract to *arbitrate*. Furthermore, the 2009 and 2010 Receipts' statement that the Manual "does not . . . create any contractual rights" is an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)            Date: April 13, 2012
           Page 15

---

even more explicit statement by the employer than that in *Mitri* indicating Defendant's desire to *not* be bound by the arbitration provision in its Manual.

Thus, as *Mitri* shows, even if Defendant is correct about a *general* rule regarding unilateral contract formation, that rule does not apply to the *specific* facts if this case. Because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights," Defendant can not now pretend that the Manual created an arbitration contract.

### iv. Conclusion

In sum, to the extent that Defendant argues that its 2009 or 2010 Receipts were offers to form an arbitration contract that Plaintiff accepted by signing them, Defendant's argument fails as a matter of law because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights."

To the extent that Defendant argues that its physical distribution or online posting of the Manual constituted an offer to form an arbitration contract that Plaintiff accepted by continuing employment, Defendant's argument fails as a matter of law because: (1) California courts routinely hold that this conduct does not form an arbitration contract; (2) California courts have roundly rejected Defendant's interpretation of *Asmus v. Pacific Bell*, 23 Cal. 4th 1 (2000); and (3) even if Defendant's interpretation of *Asmus* is correct, that general rule does not apply to the specific facts of this case because Defendant represented to Plaintiff that the Manual "does not. . . create any contractual rights."

### b. Alternatively, Plaintiff did not knowingly waive a judicial forum because the 2009 and 2010 Receipts' failed to mention the key term of the purported contract – "arbitration"

Alternatively, the Court could not compel arbitration of Plaintiff's claim under Title VII and the state-law equivalent[9] because Defendant fails to show that Plaintiff knowingly waived a judicial forum, given that the 2009 and 2010 Receipts do not mention the key term of the purported contract: "arbitration."

---

[9] Plaintiff's state court complaint brings a federal claim for retaliation under Title VII, 42 U.S.C. 2000e, as well as several other state and federal claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                  Date: April 13, 2012
                                                                                                 Page 16

       The scope of the FAA is limited by other federal statutes that "preclude or limit the enforcement of arbitration agreements with regard to claims arising under that statute." *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998). The Ninth Circuit has expressly held that Title VII and its state-law equivalents require a "knowing and voluntary" waiver of a right to a judicial forum. *See Renteria v. Prudential Ins. Co. of Am.*, 113 F.3d 1104, 1106 (9th Cir. 1997) (holding that "knowing" standard applied to determine the validity of employees' waiver of claims under Title VII by signing arbitration agreements); *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994) (holding that "knowing" standard applied to determine the validity of employees' waiver of claims under "Title VII and related state statutes" by signing arbitration agreements); *Kanbar v. O'Melveny & Myers*, -- F.Supp.2d --, C-11-0892 EMC, 2011 WL 2940690 (N.D. Cal. July 21, 2011) ("[T]he personal decision to waive the right to a judicial forum must have been knowingly made, at least where . . . statutory employment rights are at issue."); *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005) (holding that that "knowing and voluntary" standard applied to determine the validity of employees waiver's of claims under Fair Labor Standards Act by signing arbitration agreements); 39 A.L.R. Fed. 2d 253.

       A "knowing" waiver of a judicial forum requires that "the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question.'" *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998).[10]

---

[10] While not identical to the Ninth Circuit's "knowing" standard, California courts have long recognized that a written offer can incorporate another document by reference only if the "reference" is "clear and unequivocal" and the "terms of the incorporated document" were "known or easily available to the party to be bound." *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 643 (1986); *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1074 (9th Cir. 1998) (defining California law). For this reason, California courts routinely apply "California general contract law" to hold that no contract to arbitrate exists where an employee signs a form acknowledging receipt of a handbook or agreeing to adhere to the handbook if the form does not expressly mention the word "arbitration." *See* e.g., *Chan*, 178 Cal. App. 3d at 637, 643 (1986) (affirming denial of employer's motion to compel arbitration under FAA because no contract to arbitrate existed where form signed by employee did not clearly and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                  Date: April 13, 2012
                                                                                                                          Page 17

---

       In a case stunningly similar to the present one, the Ninth Circuit held that there was no knowing waiver of a judicial forum where an employee signed a form agreeing to abide by a handbook, but the form also stated that the handbook "in no way constitutes an employment contract" and could be unilaterally changed by the employer without notice. *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1154, 1156 (9th Cir. 1998). The employer's "Booklet" contained an arbitration provision and stated that the employees "could obtain a copy of" the arbitration policy in the employer's office. *Id.* The form stated "I . . . agree that I . . . must abide by the contents of this Booklet," but also stated that "this Booklet in no way constitutes an employment contract." *Id.* at 1154. The form also stated that the Booklet was "subject to change at any time and without prior notice at the sole and unlimited discretion of" the employer. *Id.* The Ninth Circuit concluded that the "clear implication of these clauses" in the form was "that the Booklet contained a set of *non-contractual* policies." *Id.* at 1155 (emphasis added). Because the form contained

---

unequivocally incorporate by reference the arbitration terms in another document, given that the word "Arbitration" was "nowhere mentioned in" the form); Rutter Cal. Prac. Guide Employment Litigation Ch. 18-C ("Under California law, an arbitration provision cannot be incorporated into an employment agreement unless the incorporation clause specifically mentions arbitration."). California courts reason that a form which fails to mention the word "arbitration" does not alert an employee about the particular terms of the contract – in this case, "arbitration" – and that California law does not permit a party to "hide the ball" regarding the terms of its contract. *See Burke v. Award, Inc.*, G042606, 2011 WL 2556029 at *1, 4-5 (June 28, 2011) (applying *Chan* to reverse order compelling arbitration where plaintiff-employee signed form stating "I understand and agree that it is my responsibility to read and familiarize myself with the . . . handbook and to abide by all policies" but form did not mention the word "arbitration"). As California courts explain, "[i]f an employer wishes to require its employees to adhere to an arbitration clause, it should make that clause explicit, preferably as explicit as possible, and clear to a layperson who is not represented by an attorney." *Id.*; *see also Derr v. Superior Court*, H037117, 2012 WL 406916 at *4-5 (Feb. 8, 2012) (vacating order compelling arbitration where plaintiff-employee signed form stating "I have received and read the . . . Arbitration Agreement . . . . I willingly agree to participate in arbitration as set forth in the Arbitration Agreement" but the handbook containing the Arbitration Agreement provided that the "handbook does not create a contract express or implied").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)             Date: April 13, 2012
                                                                                                      Page 18

---

"no *explicit* reference to arbitration or waiver of right to sue," the employee's agreement to abide by the Booklet was not a knowing waiver of a judicial forum. *Id.*

      Given that this case is virtually identical to *Kummetz* case, the Court concludes that Plaintiff's signature on the 2009 and 2010 Receipts was not a knowing waiver of a judicial forum because the Receipts stated that the Manual "does not . . . create any contractual rights" and was "subject to change . . . by Archstone . . . without advance notice." *See* Lynch Decl. Ex. C, Ex. D. Like in *Kummetz*, the Manual contained an arbitration provision and Defendant contends that this Manual was available to Plaintiff. Like in *Kummetz*, the Receipts stated "I agree to abide by the . . . Manual," but also stated that the Manual "does not . . . create any contractual rights." *Id.* Like in *Kummetz*, the Receipts stated that the Manual was "subject to change . . . by Archstone . . . without advance notice." *Id.* Thus, like in *Kummetz*, the "clear implication" of the language in the Reciepts is that the Manual "contained a set of *non-contractual* policies." *See Kummetz*, 152 F.3d at 1155 (emphasis added). Because the Receipts contained "no *explicit* reference to arbitration or waiver of right to sue," Plaintiff's agreement to abide by the Manual was not a knowing waiver of a judicial forum. *Id.*

      In sum, the Court can not compel arbitration of Plaintiff's claim under Title VII and the state-law equivalent because the Ninth Circuit has held that an employee did not knowingly waive a judicial forum under nearly identical facts to the ones here. *See also Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir.1997) (reversing order to compel arbitration of employee's ADA claim because employee did not knowingly waive judicial forum where employee signed a form acknowledging receipt of a handbook and the form did not mention the word "arbitration" nor indicate what acts by the employee constitute acceptance of a contract to arbitration).

      **c. The vast majority of persuasive authority holds that no contract to arbitrate is formed where the employer represented to its employee that its policies or handbook were not a contract**

      Furthermore, the Court notes that its decision to deny the motion to compel arbitration is consistent with the vast majority of persuasive authority that addresses this issue. The Sixth and Seventh Circuits, for example, have applied state contract law similar to California's to hold that no contract to arbitrate existed where the employer represented to its employee that its policies or handbook were not a contract. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)                          Date: April 13, 2012
                                                                                                    Page 19

---

*Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 414, 417-18 (6th Cir. 2011) (reversing order compelling arbitration because, under Michigan law, neither handbook nor "Dispute Resolution Policy" referenced within handbook constituted an offer to contract where employee signed form acknowledging receipt of handbook that stated the "handbook does not constitute any contractual obligation"); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1128, 1132 n.1 (7th Cir. 1997) (Flaum, J.) (reversing order compelling arbitration because, under Indiana law, no contract to arbitrate was formed where employee signed form stating "I agree to the . . . arbitration provisions set forth in the" handbook but the handbook stated that it "does not constitute a contract" and form employee signed stated that "[n]othing contained in the [handbook] is intended to create . . . an express or implied contract").

       State courts interpreting state contract law similar to California's similarly hold that no contract to arbitrate existed where the employer represented to its employee that its policies or handbook were not a contract. *See e.g, Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 523, 533-34, 534 n.12 (2006) (reversing order to compel arbitration where plaintiff-employee signed a form stating he had "read and understand the information outlined in the handbook" and that "provisions contained in this handbook . . . do not constitute an employment contract" because "[n]othing in the acknowledgment form . . . suggests . . . that he was entering into an arbitration agreement" given that the form "does not meet the traditional requirements necessary to the formation of a contract"); *Heurtebise v. Reliable Bus. Computers*, 452 Mich. 405, 413-14 (1996) (reversing order compelling arbitration because employment handbook did "not created an enforceable arbitration agreement" where handbook stated its policies "do not create any employment or personal contract").

       Furthermore, district courts interpreting state contract law similar to California's reach the same conclusion. *See e.g., Gallos v. FIC Am. Corp.*, 2003 WL 21804258 at *1-2 (N.D.Ill. April 14, 2003) (denying employer's motion to compel arbitration because no contract to arbitrate existed where employee received a handbook but signed a form stating that the "handbook is neither a contract of employment nor a legal document," even though the form also stated that it was the employee's "responsibility to read and comply with the policies contained in this handbook").

       Finally, treatises note that a "number of cases hold that there simply is no [arbitration] 'agreement' where the employee is given, and perhaps only acknowledges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-0009 DOC (RNBx)          Date: April 13, 2012
         Page 20

receipt of, a handbook or other policy manual." *See e.g.*, ARBITRATING EMPLOYMENT DISPUTES: AVOIDING 10 MISTAKES IN PREPARING AND IMPLEMENTING A PRE-DISPUTE ARBITRATION PROGRAM, SK013 ALI-ABA 829 (July 29-31, 2004) (citing several cases).

## IV. Disposition

For the foregoing reasons, the Court DENIES the Motion to Compel Arbitration.

MINUTES FORM 11
CIVIL-GEN          Initials of Deputy Clerk: jcb